**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| OIL-DRI CORP. OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | No. 15-cv-1067 |
| v. | ) | |
| | ) | Hon. Amy J. St. Eve |
| NESTLÉ PURINA PETCARE CO., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

<u>**MEMORANUM OPINION AND ORDER**</u>

AMY J. ST. EVE, District Court Judge:

Plaintiff Oil-Dri Corp. of America ("Oil-Dri") has filed a motion to exclude, by Inter

Partes Review ("IPR") estoppel, certain of Defendant Nestlé Purina Petcare Co.'s ("Purina")

invalidity contentions. (R. 114.) For the following reasons, the Court grants in part and denies

in part Oil-Dri's motion.

**BACKGROUND**

**I. The Current Litigation**

This case concerns U.S. Patent No. 5,975,019 ('019 Patent), entitled "Clumping Animal

Litter," filed on August 19, 1997. (R. 77-1, '019 Patent, 1.) The Abstract of the patent describes

"[a] clumping animal litter utilizing the interparticle interaction of a swelling clay, such as

sodium bentonite, in combination with a non-swelling clay material." (*Id.*) Additionally, the

patent's abstract discloses that "[p]referably, sixty percent (60%) by weight, or less, composition

of sodium bentonite is used after the judicious selection of particle size distribution such that the

mean particle size of the non-swelling clay material is greater than the mean particle size of the

sodium bentonite."

The '019 Patent has three independent claims.  Claim 1 is:

> A clumping animal litter comprising:
>
> a. a particulate non-swelling clay having a predetermined mean particle size no greater than about 4 millimeters; and
>
> b. a particulate swelling clay having a predetermined mean particle size no greater than about 2 millimeters, wherein the mean particle size of the non-swelling clay material is greater than the mean particle size of the swelling clay.

(*Id.* at col. 9:37–46.)  Claim 21 is:

> A clumping animal litter comprising:
>
> a. a particulate non-swelling clay material in the amount of at most about 60 percent by weight of the animal litter, the material having a predetermined mean particle size;
>
> b. a particulate swelling clay in the amount of at least about 40 percent by weight of the animal litter, the material having a predetermined mean particle size, and wherein the mean particle size of the non-swelling clay material is greater than the mean particle size of the swelling clay;
>
> c. an organic clumping agent in an amount within the range of about 0.25 percent by weight to about 6 percent by weight of the animal litter; and
>
> d. wherein the ratio of the mean particle size of the non-swelling clay material to the mean particle size of the swelling clay is within the range of more than about 1:1 to about 4:1.

(*Id.* at col. 10:32–49.)  Finally, Claim 30 is:

> A method for making a clumping animal litter comprising the steps of:
>
> a. combining a particulate non-swelling clay material with a suitable particulate swelling clay to form a composition wherein the mean particle size of the particulate non-swelling clay is greater than the mean particle size of the particulate swelling clay;

      b. mixing the composition to effect a substantially uniform distribution of the two materials;

      c. packaging a quantity of the mixed composition.

Oil-Dri filed this lawsuit on February 3, 2015, claiming Purina infringed the '019 Patent with its clumping cat litters. (R. 1.) In February 2017, Oil-Dri amended its complaint. (R. 77.) In the Amended Complaint, Oil-Dri claims Purina infringed claims 1–4, 6–7, 9–11, 13, 16, 21–26, 30–32, and 35 of the '019 Patent. (*Id.* at ¶ 8.) After Purina filed a partial motion to dismiss, Oil-Dri withdrew its claims related to Purina's "lightweight" products, and the Court dismissed Purina's allegations of infringement of any claim including the limitation of an "organic clumping agent." (R. 105 at 5 & n.4, 11.) While the Court gave Oil-Dri the opportunity to file a Second Amended Complaint, it opted not to do so. (*See* R. 104.)

## II.    The IPR Proceedings

### A.    Background on IPR

The Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284 (2011), created the IPR process in which the parties engaged. *See Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2136–38 (2016); *Drink Tanks Corp. v. GrowlerWerks, Inc.*, No. 3:16-cv-410-SI, 2016 WL 3844209, at *1 (D. Or. July 15, 2016); *Black & Decker Inc. v. Positec USA, Inc.*, No. 13 C 3075, 2013 WL 5718460, at *1 (N.D. Ill. Oct. 1, 2013). A party may petition for IPR "to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under [35 U.S.C. §§ 102, 103] and only on the basis of prior art consisting of patents or printed publications." 35 U.S.C. § 311(b). After receiving a petition, the Patent Trial and Appeal Board ("PTAB") must decide whether to institute IPR by determining whether "there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." § 314(a).

If the PTAB institutes IPR, it must issue a final determination within a year—or 18 months "for good cause shown"—of the date when the PTAB notices the institution of IPR. 35 U.S.C. § 316(a)(11). When the PTAB issues a final decision, the IPR petitioner is estopped from arguing in a civil action that a "claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315(e)(2).

If a party is dissatisfied with the PTAB's decision, it may request rehearing within 30 days. 37 C.F.R. § 42.71(d). Additionally, a party may appeal the PTAB's final written decision to the Federal Circuit. 35 U.S.C. § 319.

### B.     The IPR at Issue

Less than two weeks after Oil-Dri filed the current lawsuit, Purina filed an IPR petition before the PTAB. IPR Pet., *Nestlé Purina Petcare Co. v. Oil-Dri Corp. of Am.*, IPR No. 2015-00737, Paper No. 1 (PTAB Feb. 13, 2015).[1] Purina challenged claims 1–13, 30, and 32 of the '019 Patent. Decision on Institution of IPR, *Purina* IPR, Paper No. 12 at 2. Purina relied on two patents as prior art in support of its IPR petition: U.S. Patent No. 5,386,803 ("Hughes") and U.S. Patent No. 5,458,091 ("Pattengill"). *Id.* at 3. Specifically, Purina challenged the claims as follows:

| Reference(s) | Basis | Claims Challenged |
|---|---|---|
| Hughes | § 102 | 1–4, 6–13, 30, and 32 |
| Pattengill | § 102 | 1–4, 6–13, 30, and 32 |
| Hughes | § 103 | 1–13, 30, and 32 |
| Pattengill | § 103 | 1–13, 30, and 32 |
| Hughes and Pattengill | § 103 | 1–13, 30, and 32 |

---

[1] The Court cites this IPR proceeding as "*Purina* IPR."

*Id.* at 4.

The PTAB instituted IPR only on the ground of "[w]hether claims 1–13, 30, and 32 are unpatentable under 35 U.S.C. § 103(a) as obvious over the combination of Hughes and Pattengill." *Id.* at 15. On June 20, 2015, the PTAB issued a final written decision in which it concluded that Purina had failed to show by a preponderance of the evidence that any of the claims in question were invalid. (R. 52-1 at 2.) Purina filed a request for rehearing, which the PTAB denied in February 2017. (R. 69-3.) Purina appealed the PTAB's decision to the Federal Circuit, where the case is currently pending. *Nestlé Purina Petcare Co. v. Oil-Dri Corp. of Am.*, No. 17-1744 (Fed. Cir. 2017).

## ANALYSIS

Oil-Dri seeks to preclude Purina from raising certain prior art references in the current litigation based on § 315(e)(2), the IPR estoppel provision. *See Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc.*, 817 F.3d 1293, 1299–30 (Fed. Cir. 2016), *cert. denied*, 137 S. Ct. 374 (2016). Specifically, Oil-Dri argues that Purina is estopped from asserting (1) invalidity grounds raised in its IPR petition but not instituted by the PTAB under § 314 ("noninstituted grounds"), and (2) grounds not raised in Purina's petition that Purina could have reasonably raised ("nonpetitioned grounds").

## I. Noninstituted Grounds

### A. IPR Estoppel Does Not Apply to Noninstituted Grounds

With respect to the first group of invalidity grounds—the noninstituted grounds—Oil-Dri concedes that Federal Circuit precedent "holds that non-instituted prior art (prior art cited in an IPR petition, but not made part of the IPR) is not estopped in a [PTAB] proceeding, under 35 U.S.C. § 315(e)(1)." (R. 122 at 1 (citing *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d

5

1044 (Fed. Cir. 2017).)  Section 315(e)(1) is the IPR estoppel provision applying to proceedings before the Patent and Trademark Office that has the same relevant language as § 315(e)(2), the IPR estoppel provision applying to civil actions.  Section 315(e)(1) reads:

> The petitioner in an inter partes review of a claim in a patent under this chapter that results in a final written decision under section 318(a), or the real party in interest or privy of the petitioner, may not request or maintain a proceeding before the Office with respect to that claim on any ground that the petitioner raised or reasonably could have raised during that inter partes review.

Section 315(e)(2) provides:

> The petitioner in an inter partes review of a claim in a patent under this chapter that results in a final written decision under section 318(a), or the real party in interest or privy of the petitioner, may not assert . . . in a civil action arising in whole or in part under section 1338 of title 28 . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review.

Despite Oil-Dri's concession based on *Credit Acceptance*, it does not appear to have admitted that Purina is free to raise noninstituted prior art in this action.  Oil-Dri, however, does not offer any reason to distinguish the two identically worded subsections of § 315(e), nor can the Court discern one.  *See Henson v. Santander Consumer Corp. USA Inc.*, 137 S. Ct. 1718, 1723 (2017) (explaining that the petitioners failed to offer a persuasive reason to "abandon [the Supreme Court's] usual presumption that 'identical words used in different parts of the same statute' carry 'the same meaning.'" (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005))); *Hall v. United States*, 132 S. Ct. 1882, 1891 (2012) ("At bottom, 'identical words and phrases within the same statute should normally be given the same meaning." (quoting *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007))); *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1053 (Fed. Cir. 2017) (applying an interpretation of § 315(e)(1) to another section of the AIA because "[t]he normal rule of statutory interpretation [is] that identical words

used in different parts of the same statute are generally presumed to have the same meaning" (second alteration in original) (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005))); *see generally* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012) (describing the "presumption of consistent usage" interpretative canon). Because (1) the two subsections of § 315 use the same relevant language, (2) Oil-Dri concedes that the Federal Circuit held in *Credit Acceptance* that noninstituted prior art is not subject to estoppel under § 315(e)(1), and (3) Oil-Dri does not explain why the Court should interpret the two subsections of § 315(e) differently, the Court concludes that, based on Oil-Dri's representations, IPR estoppel does not apply to noninstituted grounds.

Beyond Oil-Dri's contentions, Federal Circuit precedent compels this result. In *Shaw Industries Group, Inc. v. Automated Creel Systems, Inc.*, Shaw Industries petitioned for IPR on three grounds directed at particular claims. 817 F.3d at 1296. The PTAB instituted IPR on two of the three grounds, declining to institute on the third because it was redundant in light of the PTAB's conclusion that there was a reasonable likelihood that the challenged claims were unpatentable under the other two grounds. *Id.* at 1296–97.[2] Eventually, the PTAB issued a final written decision and the parties appealed. *Id.* at 1297. In that appeal, Shaw Industries petitioned for a writ of mandamus "instructing the PTO to reevaluate its redundancy decision and to institute IPR based on the Payne-based ground [(*i.e.*, the noninstituted ground)]." *Id.* at 1299. One of Shaw Industries' arguments in favor of mandamus was that "the statutory estoppel provisions would prevent it from raising the Payne-based ground in future proceedings." *Id.* The Federal Circuit rejected this argument. *Id.* at 1300. It explained:

---

[2] One district court explained that "it appeared the PTAB had found the third ground redundant solely because it already instituted on other grounds." *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. 12-cv-05501-SI, 2017 WL 235048, at *2 (N.D. Cal. Jan 19, 2017).

Both parts of § 315(e) create estoppel for arguments "on any ground that the petitioner raised or reasonably could have raised *during* that inter partes review." Shaw raised its Payne-based ground in its petition for IPR. [T]he PTO denied the petition as to that ground, thus no IPR was instituted on that ground. The IPR does not begin until it is instituted. *See* [*In re Cuozzo Speed Techs.*, *LLC*, 793 F.3d 1268, 1272 (Fed. Cir. 2015)] ("IPRs proceed in two phases. In the first phase, the PTO determines whether to institute IPR. In the second phase, the Board conducts the IPR proceeding and issues a final decision." (citations omitted))[, *aff'd sub nom. Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131 (2016)]. Thus, Shaw did not raise—nor could it have reasonably raised—the Payne-based ground *during* the IPR. The plain language of the statute prohibits the application of estoppel under these circumstances. In light of our construction of the statute, mandamus is not warranted. Thus, we deny Shaw's petition for writ of mandamus.

*Id.* (emphasis in original). Thus, according to *Shaw*, (1) § 315(e) creates estoppel for grounds raised or grounds that reasonably could have been raised *during* an IPR, (2) an IPR does not begin until institution, and (3) if the PTAB institutes IPR on some grounds but declines to institute on others, the IPR petitioner cannot reasonably raise the noninstituted grounds *during* the IPR, so the IPR estoppel provision does not apply based on its plain language.

Oil-Dri contends that this portion of *Shaw* is dicta and cites case law for the proposition that noninstituted grounds gives rise to estoppel. (*See* R. 118, Pl.'s Reply, 6–9.) The Court rejects Oil-Dri's argument. First, the Federal Circuit has reaffirmed its conclusion in *Shaw* on multiple occasions, and various district courts have read *Shaw* as binding authority. *See Credit Acceptance*, 859 F.3d at 1053; *HP Inc. v. MPHJ Tech. Invs., LLC*, 817 F.3d 1339, 1347 (Fed. Cir. 2016) ("[T]he noninstituted grounds do not become part of the IPR. Accordingly, the noninstituted grounds were not raised and, as review was denied, could not be raised in the IPR. Therefore, the estoppel provisions of § 315(e)(1) do not apply."); *Advanced Micro Devices, Inc. v. LG Elecs., Inc.*, No. 14-cv-01012-SI, 2017 WL 2774339, at *6 (N.D. Cal. June 26, 2017); *Princeton Dig. Image Corp. v. Konami Dig. Entm't, Inc.*, No. 12-1461-LPS-CJB, 2017 WL

1196642, at *3 (D. Del. Mar. 30, 2017). Indeed, in *Credit Acceptance*, the Federal Circuit

followed the relevant portion of *Shaw* and expressly referred to it as a "holding[]." 859 F.3d at

1053.[3]

Second, even beyond the Federal Circuit and district court precedent, the Court agrees

with Purina that "due process and fairness" concerns support the conclusion that noninstituted

grounds do not give rise to estoppel. (R. 117 at 4.) A denial of a petition for IPR is not a final

decision rejecting an invalidity contention. If a mere denial of an IPR petition gave rise to

estoppel, it would deprive the petitioner of a full opportunity to be heard on the estopped ground

to no fault of the petitioner, who properly raised the invalidity contention with the PTAB.

### B. Whether the PTAB Instituting IPR on the Ground of Obviousness Based on a Combination of Two Prior Art References Bars Purina from Asserting Obviousness Based on Those References Individually

Oil-Dri argues that even if the Court accepts Purina's argument based on *Shaw* with

respect to noninstituted grounds, which it has, "[Purina] should be estopped from arguing in this

case that Pattengill, alone, renders the Challenged Claims obvious." (R. 114 at 9.) Oil-Dri relies

on "the holding in *Verinata* [*Health, Inc. v. Ariosa Diagnostics, Inc.*, No. 12-cv-05501-SI, 2017

WL 235048 (N.D. Cal. Jan. 19, 2017)]."

In *Verinata*, the defendant had petitioned for IPR based on (1) obviousness over the

combined teachings of A and B, (2) obviousness over the combined teachings of C and D, and

(3) obviousness over the combined teachings of A, B, and E. 2017 WL 235048, at *3. The

PTAB instituted IPR only on the third ground and ultimately rejected the defendant's invalidity

argument. *Id.* Once in federal court, the defendant sought to challenge patent validity based on

---

[3] Moreover, while it is a moot point in light of *Credit Acceptance*, the Court has difficulty seeing how the relevant portion of *Shaw* is dicta. While distinguishing between dicta, alternative holdings, and holdings can prove difficult, the relevant portion in *Shaw* was a legal analysis of a statute that formed the Federal Circuit's sole stated reason for denying the petition for mandamus. *See Shaw*, 817 F.3d at 1300 ("*In light of our construction of the statute*, mandamus is not warranted. Thus, we deny Shaw's petition for writ of mandamus." (emphasis added)).

(1) obviousness over the combined teachings of A and B, and (2) obviousness over the combined

teachings of C and D. *Id.* at *4. The district court, following *Shaw* just as this Court has done

above, concluded that the defendant was free to pursue its argument based on obviousness over

C and D because the defendant had petitioned for IPR on that ground and the PTAB declined to

institute on that ground. *Id.* As for the invalidity argument based on obviousness over the

combined teachings of A and B, however, the court concluded that estoppel applied even though

the PTAB had not explicitly instituted on this ground because "defendants raised, or could have

raised, th[is] ground[] in the IPR proceedings, as the combination of [A and B] is simply a subset

of the instituted grounds." *Id.* The same district court judge later followed this reasoning in

*Advanced Micro Devices*, 2017 WL 2774339, at *6 (noting that because the PTAB instituted IPR

on (1) obviousness of A in view of B, and (2) obviousness of C in view of B, estoppel prevented

the former IPR petitioner from asserting "obviousness over [A and C] as stand-alone

references"). A magistrate judge in the Eastern District of Texas also followed *Verinata*'s

reasoning in this regard in *Biscotti Inc. v. Microsoft Corp.*, No. 13-CV-01015-JRG-RSP, 2017

WL 2526231, at *7–8 (E.D. Tex. May 11, 2017).[4]

      In the current case, however, the PTAB explicitly considered in its final written decision

whether a subset of the instituted grounds was properly before it, and determined that it was not.

As mentioned previously, Oil-Dri petitioned for IPR based on, among other grounds,

(1) obviousness in light of Hughes, (2) obviousness in light of Pattengill, and (3) obviousness in

light of Hughes combined with Pattengill. The PTAB instituted IPR on the third ground. (R. 52-

1 at 4, 18.) In its final written decision, the PTAB noted that "[t]he ground of obviousness based

---

[4] Purina contends that the district court never adopted the *Biscotti* report and recommendation cited above. (R. 128, Def.'s Surreply, 5.) This does not appear to be the case, however, as the district court judge adopted the magistrate judge's report and recommendation on June 2, 2017. (R. 260.) Additionally, regardless of whether the report and recommendation was adopted or mooted as Purina contends, it is nonbinding authority that the Court may consider for its persuasive value.

on Pattengill alone was presented in the Petition, but we did not institute [IPR] on that ground. Thus, to the extent that Petitioner's arguments are directed to obviousness in view of Pattengill alone, they are not properly part of this proceeding." *Id.* at 18–19.  Though the PTAB then noted in dicta that "[e]ven if we were to consider Pattengill alone, we find that Pattengill does not render the challenged claims obvious," it is clear the PTAB did not believe any subset of the instituted grounds were properly before it.

Given the PTAB's explicit statements of what was "properly part of [the IPR]" and what was not, the Court concludes that, of the five invalidity grounds raised in the IPR petition, only the instituted ground (obviousness based on the combination of Hughes and Pattengill) gives rise to estoppel under *Shaw*.  Moreover, the nonobviousness analysis based on the combination of two prior art references does not necessarily overlap with the obviousness analysis for the two references taken individually.  A patent can be obvious in light of a single reference.  *See Bos. Sci. Scimed, Inc. v. Cordis Corp.*, 554 F.3d 982, 990–92 (Fed. Cir. 2009) (considering "[i]f a person of ordinary skill c[ould] implement a predictable variation" to a prior art reference and concluding that a single reference rendered an invention obvious (quoting *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007))); *Kroy IP Holdings, LLC v. Safeway, Inc.*, 107 F. Supp. 3d 656, 672 (E.D. Tex. 2015) (Bryson, J.).[5]  Additionally, a party can establish obviousness by showing that "a skilled artisan would have had reason to combine the teaching of [multiple] prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so."  *PAR Pharm., Inc. v. TWI Pharms., Inc.*, 773 F.3d 1186, 1193 (Fed. Cir. 2014).  When considering the motivation to combine different prior art references, the PTAB has rejected obviousness challenges—and the Federal Circuit has affirmed—where parties fail to "articulate a sufficient motivation to combine [multiple prior art

[5] Federal Circuit Judge Bryson sat by designation in this case on the district court.

references]." *See Securus Techs., Inc. v. Global Tel\*Link Corp.*, No. 2016-2573, 2017 WL 2992516, at \*4 (Fed. Cir. July 14, 2017) (quoting *Microsoft Corp v. Enfish, LLC*, 662 F. App'x 981, 990 (Fed. Cir. 2016)). Indeed, the PTAB rejected Purina's obviousness challenge because it did "not explain[] persuasively how or why a person of ordinary skill in the art would have combined the features of Hughes with those of Pattengill." (R. 52-1 at 20.) This reasoning— finding a failure to establish obviousness based on a failure to show a motivation to combine two references—shows that the obviousness inquiry based on the combination of two references is not necessarily the same as the obviousness inquiry based on a single reference. Because of this and because of the PTAB's explicit exclusion of the Hughes-alone and Pattengill-alone obviousness grounds from the IPR, Purina is not estopped from asserting obviousness based on Hughes or Pattengill, taken alone.

## II.     Nonpetitioned Grounds

### A.     Section 315(e)(2)'s Applicability to Nonpetitioned Grounds

Oil-Dri argues that Purina may not assert invalidity grounds it could have raised in its IPR petition but did not. (R. 114 at 2–4; R. 118 at 2–6.) Purina contends that, in light of *Shaw*, § 315(e)(2) applies only to instituted invalidity grounds because those are the only grounds that a petitioner can raise *during* IPR. (*See* R. 117 at 2–10.)

Statutory construction begins with the language of the statute. *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016); *Xianli Zhang v. United States*, 640 F.3d 1358, 1364 (Fed. Cir. 2011). Courts generally give words their ordinary meaning and examine both the text and structure of the statute. *See BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006); *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252–54 (2004) (considering the text and structure of a statute); *Xianli Zhang*, 640 F.3d at 1364. A court's "inquiry into the meaning

of the statute's text ceases when the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Matal v. Tam*, 137 S. Ct. 1744, 1757 (2017) (quotation omitted); *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) ("When the words of a statute are unambiguous, then this first canon is also the last: judicial inquiry is complete." (quotation omitted)).

Both parties argue that the plain language of § 315(e)(2) supports their respective arguments.[6] Oil-Dri points to the phrase "reasonably could have raised," contending that it means that a party cannot raise invalidity grounds it could have brought before the PTAB but did not. (*See* R. 118, Pl.'s Reply, 2; *see also* R. 114 at 2–3.) Purina, in contrast, points to the phrase "during that inter partes review," contending that because *Shaw* and other cases have made clear that the IPR does not begin until *after* the institution decision, an IPR petitioner cannot raise a nonpetitioned ground *during* IPR. (R. 117 at 2–4; R. 128, Def.'s Surreply, 2–4.)

The Federal Circuit has not yet considered the precise issue of whether nonpetitioned grounds can give rise to estoppel. *Shaw*, *HP*, and *Credit Acceptance* all focused on noninstituted grounds rather than nonpetitioned grounds. *See Credit Acceptance*, 859 F.3d at 1046–47, 1053 (considering a similar estoppel provision for Covered Business Method ("CBM") review proceedings, 35 U.S.C. § 325(e)(1), and concluding that § 325(e)(1) "does not apply in a subsequent proceeding to claims upon which the Board declined to institute review"); *HP*, 817 F.3d at 1347–48; *Shaw*, 817 F.3d at 1300. Thus, there is no binding case that is directly on point.

---

[6] As previously indicated, § 315(e)(2) provides:

> The petitioner in an inter partes review of a claim in a patent under this chapter that results in a final written decision under section 318(a), or the real party in interest or privy of the petitioner, may not assert . . . in a civil action arising in whole or in part under section 1338 of title 28 . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review.

In *Shaw*, as previously noted, the Federal Circuit explained that § 315(e) creates estoppel for any ground raised or that the petitioner reasonably could have raised "*during . . .* IPR." 817 F.3d at 1300. Because IPR "does not begin until it is instituted," the IPR petitioner did not and could not raise a noninstituted ground "*during* the IPR." *Id.* Accordingly, the Federal Circuit held that the "plain language of the statute prohibits the application of estoppel under these circumstances." *Id.*; *see also HP*, 817 F.3d at 1347 ("Accordingly, the noninstituted grounds were not raised and, *as review was denied, could not be raised in the IPR*." (emphasis added)). In *Credit Acceptance*, the Federal Circuit further explained "[t]here is no IPR estoppel with respect to a [patent] claim as to which no final decision results." 859 F.3d at 1052; *see also* § 315(e)(2) ("The petitioner in an [IPR] *of a claim in a patent . . .* that results in a final written decision . . . may not assert . . . *that the claim* is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review." (emphasis added)). Additionally, after reaffirming *Shaw*, the court held that § 325(e), similar to § 315(e), "does not apply in a subsequent proceeding to claims upon which the Board declined to institute review." *Id.* at 1053.

Based on these cases, the parties advocate for two separate readings of § 315(e). The first, which Oil-Dri favors, is that a petitioner fails to raise a ground it could have reasonably raised during IPR by failing to include the invalidity ground in the IPR petition. Purina urges a second option—the IPR does not begin until after institution, so only invalidity grounds the PTAB institutes are raised or can reasonably be raised during the IPR. Some district courts have adopted the former interpretation. *See Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, No. 15cv21, 2017 WL 2605977, at *2–3 (E.D. Va. June 5, 2017) (noting a split in interpretation of *Shaw*, but concluding that estoppel may apply to nonpetitioned grounds); *Biscotti*, 2017 WL 2526231, at *7

(determining that estoppel applies to grounds not included in a petition that the petitioner reasonably could have raised); *Douglas Dynamics, LLC v. Meyer Prods. LLC*, No. 14-cv-886-jdp, 2017 WL 1382556, at *4 (W.D. Wis. Apr. 18, 2017), *reconsideration granted in part on other grounds*, No. 14-CV-886-JDP, 2017 WL 2116714 (W.D. Wis. May 15, 2017); *Parallel Networks Licensing, LLC v. IBM Corp.*, No. 13-2072, 2017 WL 1045912, at *11–12 (D. Del. Feb. 22, 2017) (Jordan, J.),[7] *appeal filed*, No. 17-2115 (Fed. Cir. May 31, 2017); *Clearlamp, LLC v. LKQ Corp.*, No. 12 C 2533, 2016 WL 4734389, at *7–8 (N.D. Ill. Mar. 18, 2016).[8] Other courts have adopted the latter approach that the IPR estoppel statute does not apply to nonpetitoned grounds, though at least one court did so reluctantly. *See Intellectual Ventures I LLC v. Toshiba Corp.*, No. 13-453-SLR, 221 F. Supp. 3d 534, 553–54 (D. Del. 2016) (noting that although exempting nonpetitioned grounds from estoppel "confounds the very purpose very purpose of this parallel administrative proceeding, the court cannot divine a reasoned way around the Federal Circuit's interpretation in *Shaw*")[9]; *see also Verinata*, 2017 WL 235048, at *3 ("[In *Shaw*] [t]he court chose instead to interpret the IPR estoppel language literally, plainly stating that only arguments raised or that reasonably could have been raised *during* IPR are subject to estoppel. Since *Shaw*, courts have read the decision accordingly. Indeed, limiting IPR estoppel to grounds actually instituted ensures that estoppel applies only to those arguments, or potential arguments, that received (or reasonably could have received) proper judicial attention." (citations

---

[7] Judge Jordan of the Third Circuit sat by designation in this case.

[8] Some of these cases either predate *Shaw* or do not discuss its effect.

[9] The *Intellectual Ventures* court later reaffirmed its conclusion. *See Intellectual Ventures I LLC v. Toshiba Corp.*, No. 13-453-SLR, 2017 WL 107980, at *1 (D. Del. Jan. 11, 2017). The court noted, however, that "the Federal Circuit has not addressed" the specific issue of the IPR estoppel statute's application to nonpetitioned grounds. *Id.* After reviewing the policy arguments in favor of the two possible approaches, the court concluded that it was "not inclined to change [its] original decision, with the hopes that an appeal may clarify the issue for future judges in future cases." *Id.*

omitted)); *see also Lighting Sci. Grp. Corp. v. Shenzhen Jiawei Photovoltaic Lighting Co.*, No. 16-cv-3886-BLF, 2017 WL 2633131, at *5 (N.D. Cal. June 19, 2017) (interpreting *Verinata* to interpret § 315(e) to apply only to grounds raised in the IPR petition and instituted by the PTAB); *Cobalt*, 2017 WL 2605977, at *3 (same). The PTAB has expressed the view that the IPR estoppel provision applies to nonpetitioned grounds. *See Great W. Cas. Co. v. Intellectual Ventures II LLC*, IPR No. 2016-01534, Paper No. 13, at 11–14 (PTAB Feb. 15, 2017) ("[A] petitioner makes an affirmative choice to avail itself of *inter partes* review only on certain grounds. That choice, however, comes with consequences, most prominently, that grounds petitioner elects not to raise in its petition for *inter partes* review may be subject to the consequences of Section 315(e)(1).").

The Court concludes that the first reading of § 315(e)(2) is correct in light of the plain language of the statute. A party raises an invalidity ground before the PTAB by including it in its IPR petition. *See* 35 U.S.C. §§ 311–14. If a party does not include an invalidity ground in its petition that it reasonably could have included, it necessarily has not raised a ground that it "reasonably could have raised during . . . IPR." § 315(e)(2). That *Shaw* and other cases have held that IPR does not begin until after the PTAB's institution decision does not change this result. Additionally, while it makes sense that noninstituted grounds do not give rise to estoppel because a petitioner cannot—to no fault of its own—raise those grounds after the institution decision, when a petitioner simply does not raise invalidity grounds it reasonably could have raised in an IPR petition, the situation is different. Finally, Purina's view of the IPR estoppel statute renders the "reasonably could have raised" language nearly meaningless. Under Purina's reading of the statute, the "reasonably could have raised" language would come into play where a petitioner raises a ground in a petition, the PTAB institutes IPR on that ground, the petitioner

abruptly changes course and fails to pursue that ground before the PTAB post-institution, and then later the petitioner changes course once again and seeks to raise that invalidity ground in federal court. The Court has difficulty understanding why a party would pursue such a strategy. The far more sensible interpretation—in light of the text of the statute—is that estoppel applies to grounds that a party failed to raise in an IPR petition that the party reasonably could have raised.

Furthermore, the purpose of IPR supports the Court's reading of the § 315(e)(2). The Federal Circuit has previously indicated that the current IPR procedures in the AIA provide an efficient alternative to litigation in terms of both time and cost. *Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1303 (Fed. Cir. 2015); *see also id.* at 1308 (noting "Congress's purpose in creating IPR as part of a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs." (quotations omitted)). The Supreme Court has similarly recognized that "Inter partes review is an efficient system for challenging patents that should not have issued." *Cuozzo*, 136 S. Ct. at 2144 (quotation omitted); *see also In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1380–81 (Fed. Cir. 2016). In addition, district courts regularly have recognized that IPR proceedings are meant to promote efficiency and reduce the burden on federal courts by serving as an alternative to litigation. *See, e.g.*, *Medtronic, Inc. v. Lee*, 151 F. Supp. 3d 665, 670, 676 (E.D. Va. 2016) (explaining that the AIA's IPR procedures "[r]eflect Congress's[s] unified intention to streamline [IPR]" and that Congress sought to reduce federal litigation with IPR), *appeal dismissed*, No. 16-1540, Dkt. 39 (Fed. Cir. May 11, 2017); *see also NFC Tech. LLC v. HTC Am., Inc.*, 2015 WL 1069111, at *5 (E.D. Tex. Mar. 11, 2015) (Bryson, J.) (noting the policy goals of IPR, including creating a more efficient alternative to litigation); *PersonalWeb Techs., LLC v. Facebook, Inc.*, Nos. 13-CV-

1356-EJD, 13-CV-1358-EJD, 2014 WL 116340, at *1–2 (N.D. Cal. Jan. 12, 2014).

In addition to being contrary to the plain language of the statute, Purina's view of § 315(e)(2) conflicts with the purpose behind IPR proceedings. It invites parties to take "a second bite at the apple and allow [them] to reap the benefits of [an] IPR without the downside of meaningful estoppel." *Parallel Networks*, 2017 WL 1045912, at *12; *see also Douglas*, 2017 WL 1382556, at *4 (noting that exempting nonpetitioned grounds from estoppel "undermines the purported efficiency of IPR" because IPR would no longer be "an alternative to litigating validity in the district court, it [would be] an additional step in the process"). Such a result, when compared with Oil-Dri's reading of the statute, hardly promotes efficiency or reduces the burden on federal courts. In fact, it may do the opposite, simply allowing defendants to open a second front in patent infringement cases. *See Cobalt Boats*, 2017 WL 2605977, at *3 ("[T]he broad reading of *Shaw* renders the IPR estoppel provisions essentially meaningless because parties may pursue two rounds of invalidity arguments as long as they carefully craft their IPR petition."); *Douglas*, 2017 WL 1382556, at *4 ("A patent infringement defendant does not have to take the IPR option; it can get a full hearing of its validity challenge in district court. If the defendant pursues the IPR option, it cannot expect to hold a second-string invalidity case in reserve in case the IPR does not go defendant's way.").

Additionally, the fairness and due process concerns that arise in the context of noninstituted grounds—which motivated the district court in *Verinata*—do not exist in the context of nonpetitioned grounds. *See Verinata*, 2017 WL 235048, at *3 ("[L]imiting IPR estoppel to grounds actually instituted ensures that estoppel applies to only those arguments, or potential arguments, that received (or reasonably could have received) proper judicial attention."). The Court appreciates Purina's argument that estopping a party from raising

noninstituted (but petitioned-for) grounds—which the PTAB declines to fully consider—deprives a party of "a full and fair opportunity to be heard on the estopped ground." (R. 117 at 4.) But where a party fails to raise a claim that it reasonably could have raised, different issues arise. Estopping a party in such a situation is both fair—as the party could only blame itself—as well as common. *See Asetek Danmark A/s v. CMI USA Inc.*, 852 F.3d 1352, 1365 (Fed. Cir. 2017) ("[C]laim preclusion 'requires a party to assert all claims that the party *could have asserted* in the earlier lawsuit'" (emphasis added) (quoting *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1343 (Fed. Cir. 2012))); *Evans v. Bldg. Materials Corp. of Am.*, 858 F.3d 1377, 1382 (Fed. Cir. 2017) (discussing waiver); *Bell v. Taylor*, 827 F.3d 699, 707 (7th Cir. 2016) ("[R]es judicata bars not only those issues which were actually decided in a prior suit, but also all issues which *could have been raised* in that action) (emphasis added) (quoting *Highway J Citizens Grp. v. U.S. Dep't of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006))); *see also Great W.*, No. 2016-01534, Paper No. 13, at 13 ("[W]e discern a substantive distinction between a ground that a petitioner attempted to raise, but was denied a trial, and a ground that a petitioner could have raised but elected not to raise in its previous petition.").[10]

---

[10] Additionally, while relying on isolated pieces of legislative history "is an exercise fraught with hazards and 'a step to be taken cautiously,'" *New Eng. Power Co. v. New Hampshire*, 455 U.S. 331, 342 (1982); *Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993) (Scalia, J., concurring) ("The greatest defect of legislative history is its illegitimacy. We are governed by laws, not by the intentions of legislators."); *Synopsys, Inc. v. Mentor Graphics Corp.*, 814 F.3d 1309, 1316 (Fed. Cir. 2016) ("Floor statements by a few members of the legislative branch cannot supplant the text of [a] bill as enacted."), the Federal Circuit and Seventh Circuit both have considered legislative history when a statute is ambiguous. *See Martinez v. United States*, 803 F.3d 878, 883 (7th Cir. 2015); *Xianli Zhang*, 640 F.3d at 1364. Here, Oil-Dri points to various statements in the record—some of which are relied upon by the courts cited above—that support its reading of § 315(e). *See, e.g.*, *Biscotti*, 2017 WL 2526231, at *6 (noting that Senator John Kyl said that "[a]dding the modifier 'reasonably' ensures that could-have-raised estoppel extends only to that prior art which a skilled researcher conducting a diligent search reasonably could have been expected to discovery," and that Senator Chuck Grassley said that "if an [IPR] is instituted while litigation is pending, that review will completely substitute for at least the patents-and-printed-publications portion of the civil litigation"). Legislative history is hardly conclusive, and it is irrelevant in this case given the clarity of the statute's text. But if considered, it helps confirm what the plain language of the statute, the structure of IPR, and the purpose of IPR have already shown: that § 315(e) applies to nonpetitioned grounds.

Accordingly, § 315(e) applies to nonpetitioned grounds with respect to patent claims for which the PTAB issued a final written decision. *See Credit Acceptance*, 859 F.3d at 1052 ("There is no IPR estoppel with respect to a [patent] claim as to which no final decision results."). The Court therefore turns to the question of whether Purina reasonably could have raised in its IPR petition the nonpetitioned grounds it now asserts.

**B.    Which Nonpetitioned Prior Art References Purina Reasonably Could Have Raised Before the PTAB**

The issue remains whether Purina reasonably could have raised the nonpetitioned grounds it now asserts. Looking to case law and PTAB precedent, Oil-Dri contends that prior art an IPR petitioner "reasonably could have raised" in its IPR petition includes prior art that a "skilled searcher conducting a diligent search reasonably could have been expected to discovery." (R. 114 at 4 (quoting *Clearlamp*, 2016 WL 4734389, at *7–8)); *see also, e.g.*, *Parallel Networks*, 2017 WL 1045912, at *11; *Douglas*, 2017 WL 1382556, at *5; *Great W.*, No. 2016-01534, Paper No. 13, at 15. Beyond arguing that estoppel simply does not apply to nonpetitioned grounds, Purina does not offer an alternative standard, supported with citations to authority, for determining what it "reasonably could have raised" under § 315(e)(2). Given Purina's lack of argument, and the courts' and the PTAB's use of Oil-Dri's asserted standard, the Court will apply it.[11] Oil-Dri bears the burden of establishing estoppel, as it admits. (R. 114 at 6 (citing *Clearlamp*, 2016 WL 4734389, at *9).)

Oil-Dri attaches the declaration of Isaac Angres, a registered Patent Agent who has significant experience "searching patents for clients for the past 41 years." (R. 114-7.) He identifies various prior art references that he contends that a "reasonably skilled patent searcher" would have located: U.S. Patent No. 5,469,809 ("Coleman"), Japanese Patent Application No.

_____

[11] The Court notes that if it were to use a different standard, it would adopt one less favorable to Purina that simply asks whether the prior art was publicly available at the time of the IPR petition.

S62-239932 ("Shinohara"), U.S. Patent No. 5,402,752 ("Hahn"), U.S. Patent No. 5,806,462 ("Parr"), Canadian Patent Application 2061578 ("Cresswell"), Japanese Patent Application 07-099857 ("Akiyama"), and patent application No. 07/417,591 ("Banschick"). (*Id.* at ¶ 4.) Purina relies on the declaration of another Patent Agent, Brian Marton. (R. 117-4.)

With respect to the Coleman, Hahn, Parr, and Cresswell references, Purina provides no response to Angres's declaration. Indeed, Marton admits that "[a] reasonably skilled patent searcher may have identified [those four references]." (R. 117-4 at ¶ 9.) Oil-Dri points this out in its reply brief, arguing that Marton's admission makes clear that Purina is estopped from raising these four references. (R. 118 at 11.) Purina does not counter this contention in its surreply. Accordingly, Purina is estopped from raising Coleman, Hahn, Parr, and Cresswell with respect to patent claims before the PTAB during Purina's IPR.

The parties' remaining disputes pertain to Shinohara, Akiyama, and Banschick. The Court denies Oil-Dri's motion without prejudice with respect to these references. The Court will address these prior art references at the next status hearing.[12]

---

[12] Oil-Dri does not at this time challenge Purina's ability to assert its products (Kitty Litter Maxx and Scamp Scoop MT) as prior art. (R. 118 at 14.) Oil-Dri does, however, argue that Purina makes certain vague initial invalidity contentions involving combinations of prior art that fail to satisfy Local Patent Rule 2.3(b)(3). (*See* R. 118 at 10 n.8.) The Court denies without prejudice Oil-Dri's motion with respect to this issue until Purina files its final invalidity contentions.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part, Oil-Dri's motion.

Dated: August 2, 2017

ENTERED

_____

AMY J. ST. EVE
United States District Court Judge