# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| OIL-DRI CORP. OF AMERICA, | ) |
| | ) |
| Plaintiff/Counter-Defendant, | ) |
| | ) Case No. 15 C 1067 |
| v. | ) |
| | ) |
| NESTLÉ PURINA PETCARE CO., | ) |
| | ) |
| Defendant/Counter-Plaintiff. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On December 8, 2017, Plaintiff Oil-Dri Corp. of America ("Oil-Dri") served its Final Infringement Contentions pursuant to Northern District of Illinois Local Patent Rules ("LPR") 3.1 and 3.3 and the Court's November 15, 2017 Amended Scheduling Order. Before the Court is Defendant Nestlé Purina Petcare Co.'s ("Purina") motion to strike Oil-Dri's Final Infringement Contentions for failing to comply with the LPR and the Court's Amended Scheduling Order. For the following reasons, the Court, in its discretion, grants in part and denies in part Purina's motion to strike. The Court grants Oil-Dri leave to amend its Final Infringement Contentions as to the direct infringement contentions discussed in detail below. Oil-Dri's Amended Final Infringement Contentions are due on or before March 5, 2018.

## FACTUAL BACKGROUND

Oil-Dri brings the present infringement lawsuit in regard to U.S. Patent No. 5,975,019 ('019 Patent), entitled "Clumping Animal Litter," filed on August 19, 1997 and issued on November 2, 1999. (R. 77-1, '019 Patent; R. 77, Am. Compl. ¶ 6.) In particular, Oil-Dri alleges that some of Purina's "Tidy Cats" clumping cat litters infringe the '019 Patent, including, Instant Action, Dual Power, 24/7 Performance, 4-in-1 Strength, Glade® Tough Odor Solutions, Breathe

Easy, Small Spaces, Occasional Cleaning, Active Spaces, Crystals Blend, Power Blend, Fall Frolic, Spring Breeze, Summer Twist, Coastal Grove, Mountain Escape, and Secret Garden ("Accused Products" or "Accused Instrumentalities"). (Am. Compl. ¶¶ 7, 8; R. 2-19, Ex. A, Final Infringement Contentions a-b, at 1-2.)

The Abstract of the patent describes "[a] clumping animal litter utilizing the interparticle interaction of a swelling clay, such as sodium bentonite, in combination with a non-swelling clay material." In addition, the Abstract discloses that "[p]referably, sixty percent (60%) by weight, or less, composition of sodium bentonite is used after the judicious selection of particle size distribution such that the mean particle size of the non-swelling clay material is greater than the mean particle size of the sodium bentonite."

The '019 Patent has three independent claims. Claim 1 is:

A clumping animal litter comprising:

a. a particulate non-swelling clay having a predetermined mean particle size no greater than about 4 millimeters; and

b. a particulate swelling clay having a predetermined mean particle size no greater than about 2 millimeters, wherein the mean particle size of the non-swelling clay material is greater than the mean particle size of the swelling clay.

(*Id*. at col. 9:37–46; Am. Compl. ¶ 9.) Claim 21 is:

A clumping animal litter comprising:

a. a particulate non-swelling clay material in the amount of at most about 60 percent by weight of the animal litter, the material having a predetermined mean particle size;

b. a particulate swelling clay in the amount of at least about 40 percent by weight of the animal litter, the material having a predetermined mean particle size, and wherein the mean particle size of the non-swelling clay material is greater than the mean particle size of the swelling clay;

c. an organic clumping agent in an amount within the range of about 0.25 percent by weight to about 6 percent by weight of the animal litter; and

> d. wherein the ratio of the mean particle size of the non-swelling clay material to the mean particle size of the swelling clay is within the range of more than about 1:1 to about 4:1.

(*Id.* at col. 10:32–49.) Last, Claim 30 is:

> A method for making a clumping animal litter comprising the steps of:
>
> a. combining a particulate non-swelling clay material with a suitable particulate swelling clay to form a composition wherein the mean particle size of the particulate non-swelling clay is greater than the mean particle size of the particulate swelling clay;
>
> b. mixing the composition to effect a substantially uniform distribution of the two materials;
>
> c. packaging a quantity of the mixed composition.

(*Id*. at col. 11:3-13.)

## LOCAL PATENT RULES

Local patent rules "are essentially a series of case management orders[.]" *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,* 467 F.3d 1355, 1363 (Fed. Cir. 2006). Here in the Northern District of Illinois, the initial disclosures under LPR 2.2 through 2.5 obligate patent litigants to disclose the basis for their allegations the purpose of which is to identify the issues in the case and allow the parties to narrow their discovery requests. *See* Judge Matthew F. Kennelly, Edward D. Manzo, *Northern District of Illinois Adopts Local Patent Rules*, 9 J. Marshall Rev. Intell. Prop. L. 202, 212 (2010); *see also* N.D. Ill. LPR 1.6 cmt. In other words, "the purpose of infringement contentions is to provide notice of the plaintiff's theories of infringement early in the case because, in practice, it is difficult to obtain such information through traditional discovery means, such as interrogatories." *Sloan Valve Co. v. Zurn Indus., Inc.*, No. 1:10-CV-00204, 2012 WL 6214608, at *2 (N.D. Ill. Dec. 13, 2012) (citation omitted).

To that end, under LPR 2.2, "a party claiming patent infringement must serve its counterpart with initial infringement contentions" that require the party claiming infringement to "identify the patent claims it contends are infringed and each accused instrumentality (product, process, etc.) and to provide a statement of whether each element is believed to be found literally or via the doctrine of equivalents." *See Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, No. 16 C 9179, 2017 WL 1862646, at *2 (N.D. Ill. May 9, 2017); Kennelly, *supra*, at 212. "LPR 2.3 requires the accused infringer to serve initial contentions explaining the basis for any claims of non-infringement, unenforceability, and invalidity." Kennelly, *supra*, at 213; *see also Sloan Valve Co. v. Zurn Indus., Inc.*, No. 10-CV-00204, 2013 WL 6132598, at *22 (N.D. Ill. Nov. 20, 2013). Thereafter, LPR 3.1 requires service of Final Infringement Contentions and LPR 3.2 requires the accused infringer's response to the final contentions. *See Morningware, Inc. v. Hearthware Home Prod., Inc.*, No. 09 C 4348, 2010 WL 3781254, at *2 (N.D. Ill. Sept. 22, 2010); Kennelly, *supra*, at 216. The Final Infringement Contentions must provide the information required in the initial disclosures under LPR 2.2. *See* N.D. Ill. LPR 3.1; *Morningware,* 2010 WL 3781254, at *2. Furthermore, the "[p]arties must offer 'meaningful' and 'nonevasive' disclosures, not just boilerplate language." *Oil-Dri Corp. of Am.,* 2017 WL 1862646, at *2 (citing N.D. ILL. L.P.R. 2.0 cmt.). Last, "district courts possess wide discretion in interpreting their local rules." *Id*. (citing *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1324 (Fed. Cir. 2016)).

**LEGAL STANDARD**

It appears that Purina is bringing the present motion to strike under Rule 16(f) because it seeks the sanction of estopping Oil-Dri from asserting any of its allegedly deficient Final Infringement Contentions, instead of Rule 12(f), which "provides that a district court 'may strike

4

from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" *Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009) (quoting Fed.R.Civ.P. 12(f)). Under Rule 16(f), which references Rule 37(b)(2)(A), district courts may sanction a party for failing to obey a scheduling order pertaining to the disclosure of infringement contentions. *See O2 Micro Int'l,* 467 F.3d at 1363; *In re Papst Licensing GmbH & Co. KG Litig.*, 273 F.R.D. 339, 343 (D.D.C. 2011). These sanctions may include "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence[,]" as well as "striking pleadings in whole or in part[.]" Fed. R. Civ. P. 37(b)(2)(A)(ii), (iii); *see also O2 Micro Int'l,* 467 F.3d at 1363. District courts have considerable discretion when imposing sanctions under Rule 16(f). *See Koehn v. Tobias*, 866 F.3d 750, 752 (7th Cir. 2017); *Long v. Steepro*, 213 F.3d 983, 985 (7th Cir. 2000). "The choice of appropriate sanctions is primarily the responsibility of the district court," although "the sanction selected must be one that a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction." *Long,* 213 F.3d at 986 (citations omitted).

## ANALYSIS

In the present motion, Purina seeks to strike certain contentions based on Oil-Dri's alleged failure to: (1) comply with LPR 2.2(c) as to its direct infringement contentions; (2) comply with LPR 2.2(d) in asserting infringement under the doctrine of equivalents; and (3) identify the required disclosures for the alleged indirect or direct inducement of infringement under LPR 2.2(e). Purina also takes issue with Oil-Dri's use of the U.S. Patent No. 6,887,570 ("the '570 Patent"), owned by Nestlé S.A., as a product specification for the Accused Products. The Court addresses each argument in turn.

5

**I.      Direct Infringement**

Purina first argues that Oil-Dri's direct infringement contentions embodied in Oil-Dri's chart detailing the dependent and independent claims of the '019 Patent as required by LPR 2.2(c) are "devoid" of the required disclosures. Purina specifically argues that Oil-Dri's reliance on its testing of the Accused Instrumentalities does not provide sufficient details for the limitation "predetermined mean particle size," also known as predetermined MPS. In response, Oil-Dri explains that determining whether the claim limitation "predetermined MPS" is embodied in the Accused Products involves expert chemical testing and that it has provided Purina with such testing results and data as an exhibit to its Final Infringement Contentions. *See Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 582 (7th Cir. 1981) (per curiam) ("In a chemical patent, there is no way to show that these elements exist in the accused product without utilizing highly technical tests performed by experts."); *Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.,* No. 16 C 09179, 2017 WL 1436965, at *6 (N.D. Ill. Apr. 24, 2017) ("Where a party needs to have test results showing the existence of infringing ingredients in specific amounts in the opposing party's products, the production of the test results is not only relevant, but essential to the case.").

In any event, Purina asks the Court strike certain Final Infringement Contentions because Oil-Dri does not explain where the claim limitation "predetermined MPS" is found in the Accused Instrumentalities. As Judge Holderman has explained, "infringement contentions must 'set[ ] forth particular theories of infringement with sufficient specificity to provide defendants[ ] with notice of infringement beyond that which is provided by the mere language of the patents themselves.'" *Fujitsu Ltd. v. Tellabs Ops., Inc.*, No. 08 C 3379, 2012 WL 3018027, at *4 (N.D. Ill. July 23, 2012) (quoting *Network Caching Tech., LLC v. Novell, Inc.*, No. C–01–2079 VRW,

2003 WL 21699799, at *4 (N.D. Cal. Mar. 21, 2003)). In other words, "[i]nfringement contentions are generally considered adequate if they provide fair notice of the scope of the plaintiff's infringement theory." *Trading Techs. Int'l, Inc. v. CQG, Inc.*, No. 05-CV-4811, 2014 WL 4477932, at *2 (N.D. Ill. Sept. 10, 2014).

From examining patent cases in this District and from the Northern District of California – which has similar local patent rules about infringement contentions – the notion of "fair notice" in this context is a case-by-case determination keeping in mind the Court's wide discretion in interpreting the local patent rules.[1] Under this guidance, if the Court only looks to the LPR 2.2(c) claim chart, the use of the word "testing" appears to be vague, but Oil-Dri's Final Infringement Contentions contain more than this chart, including the expert testing data attached as Exhibit L to its contentions. Moreover, based on the parties' extensive fact discovery in this matter – that is ongoing – the scope of Oil-Dri's theory of direct infringement is no secret.

That being said, instead of striking these Final Infringement Contentions, the better course of action is to treat this aspect of Purina's motion to strike as a motion to compel amendment to the infringement contentions. *See, e.g., Oil-Dri Corp. of Am.*, 2017 WL 1862646, at *3; *Ventriloscope v. MT Tool & Mfg.*, No. 16 C 5298, 2017 WL 489416, at *3 (N.D. Ill. Feb. 6, 2017) ("it is appropriate to treat Defendant's motion as seeking to compel more detail, not as seeking the severe sanction of striking the contentions altogether."). Indeed, allowing Oil-Dri to amend the infringement contentions in relation to the claims highlighted on pages 4-5 of Purina's opening brief follows the Seventh Circuit's direction that Rule 16(f) sanctions must be

---

[1] Prior to the Supreme Court's decisions in *Iqbal* and *Twombly*, the Federal Circuit reasoned that infringement contentions need only meet the "simplified notice pleading" standard. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006).

"proportionate to the infraction." *Long,* 213 F.3d at 986. Moreover, Purina will not suffer any prejudice given that the expert information provided by Oil-Dri has put it on notice.

Likewise, Purina argues that Oil-Dri's Final Infringement Contentions insert a deficient allegation of infringement during manufacturing highlighting the following contention:

> Oil-Dri also notes that it believes that not only the final packaged litter product literally infringes, but also the litter product upon mixing of its constituent swelling and non-swelling clays to form the agglomerated litter, prior to any other steps the litter may undergo, including, inter alia, the addition of fragrance and color, and packaging.

(Final Infringement Contention d., at 3.) Purina specifically argues that this statement fails to identify any elements or characteristics of any constituent materials that read on or meet any of the limitations of any of the asserted claims. In response, Oil-Dri contends "that there is no meaningful difference, *vis.* infringement, between Nestle's accused litter once its agglomerated litter has been formed (i.e., after the mixing and drying steps), but prior to the steps of adding fragrance, color or packaging." (Resp., at 3.)

Although Oil-Dri's response is cursory, Purina's arguments in support of sanctioning Oil-Dri by striking this contention are not persuasive. Infringement contentions in this District are a discovery tool, yet by bringing motions to strike infringement contentions, patent litigants have turned them into a tool for filing dispositive motions. *See Cleversafe, Inc. v. Amplidata, Inc.*, 287 F.R.D. 424, 431 (N.D. Ill. 2012). Purina will have ample opportunity to argue that Oil-Dri's theory of direct infringement in relation to its manufacturing contention is baseless at summary judgment or trial. In the interim, the Court, in its discretion, grants Oil-Dri leave to amend its manufacturing contention.

Accordingly, the Court, in its discretion, denies Purina's motion as to these direct infringement contentions and grants Oil-Dri leave to amend the contentions by no later than March 5, 2018.

## II. Doctrine of Equivalents

Next, Purina asserts that Oil-Dri's Final Infringement Contention concerning its theory under the doctrine of equivalents does not provide the requisite explanation or detail under LPR 2.2(d). To give context, "[e]ven when an accused product does not meet each and every claim element literally, it may nevertheless be found to infringe the claim 'if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention.'" *Intendis GMBH v. Glenmark Pharm. Inc.,* USA, 822 F.3d 1355, 1360 (Fed. Cir. 2016) (citation omitted). Moreover, "although the standard for infringement under the doctrine of equivalents is simple to articulate, it is conceptually difficult to apply." *Texas Instruments Inc. v. Cypress Semiconductor Corp.,* 90 F.3d 1558, 1566-67 (Fed. Cir. 1996). With this in mind, under LPR 2.2(d), a plaintiff must "include an explanation of each function, way and result that is equivalent and why any differences are not substantial[.]" *Smart Options, LLC v. Jump Rope, Inc.*, No. 12 C 2498, 2012 WL 5499434, at *7 (N.D. Ill. Nov. 13, 2012) (quoting LPR 2.2(d)).

In support of its doctrine of equivalents theory of infringement, Oil-Dri's contention states that it finds the non-swelling opaline silica material manufactured at Purina's Maricopa plant to be "clay material," and thus infringing. (Final Infringement Contention d., at 3.) Oil-Dri then highlights certain Accused Products that Purina manufactures at its Maricopa plant – yet does not point to which specific aspects of these Accused Products are equivalent and why any differences are insubstantial. (*Id.*) Further muddying the waters, in its response brief, Oil-Dri

argues that because it did not know what Purina's position was, "as a precaution, Oil-Dri asserted the doctrine of equivalents as to the Maricopa clay." (R. 268, Resp., at 5.) Oil-Dri also contends that because Purina "failed to comply with LPR 2.3(a) and failed to provide any basis in its Initial non-infringement contentions for its new position that the Maricopa material is not a 'clay material,'" Purina should be precluded from taking this position at trial. (Resp., at 1.) The Court notes that despite this argument, Oil-Dri's own Response to Objections in Initial Non-Infringement Contentions refutes the fact that this is a "new position." (R. 219-1, Ex. A. Objection Initial Non-Infringement Contentions 3, at 6.) Moreover, Oil-Dri's argument regarding Purina's "failure" does not excuse it from following LPR 2.2(d).

Because Oil-Dri's Final Infringement Contentions (and explanations in its legal memorandum) do not sufficiently address why the purported aspects of the Accused Products are equivalent and why any differences are insubstantial, Oil-Dri has not adequately fulfilled LPR 2.2(d) for its theory of liability under the doctrine of equivalents. *See Morningware,* 2010 WL 3781254, at *7; *Oil-Dri Corp. of Am.,* 2017 WL 1862646, at *6 ("Since the local rules require any claim under the doctrine of equivalents to include 'an explanation of each function, way, and result that is equivalent and why any differences are not substantial' in a party's initial contentions, N.D. ILL. L.P.R. 2.2(d), Oil-Dri's contentions fail in this regard."). The Court further recognizes that in Purina's Initial Non-Infringement Contentions it provided a detailed explanation why Oil-Dri's doctrine of equivalents contention did not sufficiently meet the requirements of LPR 2.2(d). (R. 219-6, Ex. F, 4/12/17, Initial Non-Infringement Contentions, at 6-7.) Unlike Oil-Dri's direct infringement contentions discussed immediately above, Oil-Dri's doctrine of equivalents contention is impermissibly vague and its arguments

in support of this contention are not well-reasoned. The Court therefore grants Purina's motion in this respect and strikes Oil-Dri's contentions regarding the doctrine of equivalents.

## III. Indirect Infringement

Turning to Oil-Dri's Final Infringement Contentions in relation to its indirect infringement allegations, Purina maintains that Oil-Dri has failed to identify the required disclosures under LPR 2.2(e), which states "for each claim that is alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducting that direct infringement." Oil-Dri's Final Infringement Contention in this respect states:

> As to each of the Asserted Claims, Nestlé has also indirectly infringed and induced infringement pursuant to 35 U.S.C. § 271(b), by advertising, marketing and selling the Accused Instrumentalities to Nestlé retailers (e.g., WalMart, Target, Kroger, Dollar General, Walgreens, PetSmart, etc.), for example, for resale to consumers.

(Final Infringement Contention e., at 3.)

Recently, Chief Judge Castillo articulated that "[c]ourts in other districts with disclosure requirements similar to LPR 2.2(e) have upheld contentions relating to indirect infringement so long as the plaintiff 'discloses sufficient information to set forth its theory of infringement,' 'identifies a particular product ... that was sold to customers,' and contends that the direct infringement 'occurs when the customer uses the [product].'" *Ventriloscope,* 2017 WL 489416, at *6 (citation omitted). Under this reasoning, Oil-Dri has sufficiently identified the Accused Products in its Final Infringement Contentions, the retailers involved in selling the Accused Products, and indicates that the indirect infringement occurred by advertising, marketing, and selling the Accused Products. Further, Oil-Dri attached examples of Purina's advertisements in relation to the Accused Products to its Final Infringement Contentions disclosing additional

11

information forming the basis for its indirect infringement allegations. As such, Oil-Dri has satisfied the requirements under LPR 2.2(e), and therefore, the Court denies this aspect of Purina's motion to strike. *See Fujitsu Ltd.*, 2012 WL 3018027, at *4 ("Infringement contentions are generally considered adequate if they 'provide fair notice of the scope of [the plaintiff's] infringement theory.'") (citation omitted).

## IV. Reliance on U.S. Patent No. 6,887,570

Furthermore, Purina argues that Oil-Dri's Final Infringement Contentions are insufficient because instead of identifying where certain claimed elements can be found in the Accused Products, Oil-Dri references and relies upon U.S. Patent No. 6,887,570 ("the '570 Patent"), which is owned by Nestlé S.A. Purina specifically highlights Oil-Dri's reliance on the '570 Patent as a purported basis for 14 of the 18 limitations in its LPR 2.2(c) claim chart, asserting that Oil-Dri is attempting to use the '570 Patent as a product specification for the Accused Products.

Indeed, after reviewing Oil-Dri's LPR 2.2(c) claim chart, although Oil-Dri identifies certain claim limitations in the Accused Products, it also relies on the '570 Patent in some instances. Furthermore, this is not a situation where the Accused Products are not publically or commercially available, but instead, the Accused Products are sold in the marketplace and Purina provided Oil-Dri with at least six physical samples of certain TidyCats products for testing. *See, e.g., SAGE Electrochromics Inc. v. View Inc.,* No. C-12-06441 JST (DMR), 2013 WL 4777164, at *3 (N.D. Cal. Sept. 6, 2013); *cf. Creagri, Inc. v. Pinnaclife Inc., LLC,* No. 11-CV-06635-LHK-PSG, 2012 WL 5389775, at *2 (N.D. Cal. Nov. 2, 2012) ("to the extent appropriate information is reasonably available to it, a patentee must nevertheless disclose the elements in

each accused instrumentality that it contends practices each and every limitation of each asserted claim").

Equally important, in its response brief, Oil-Dri does not address Purina's argument that it improperly relies upon extraneous information as a substitute for the Accused Products. Under these circumstances, the Court grants Purina's motion in this respect and strikes Oil Dri's reliance on the '570 Patent. *See Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1078 (7th Cir. 2016) (failing to respond to defendants' arguments amounts to waiver of claims); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument ... results in waiver.").[2]

## CONCLUSION

For these reasons, the Court, in its discretion, grants in part and denies in part Defendant's Rule 16(f) motion to strike certain Final Infringement Contentions.

**Dated:** February 26, 2018

                                **ENTERED**

                                *[signature]*
                                **AMY J. ST. EVE**
                                **United States District Court Judge**

---

[2] The Court will not consider any arguments regarding Oil-Dri's willfulness contentions because, as Purina asserts in its reply brief, "[w]hile there is no basis for any claim of willful infringement, Purina did not include an argument on willfulness in its Motion to Strike, nor is it arguing the issue in this Reply." (R. 301, Reply Brief, at 12 n.10.)