UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OIL-DRI CORPORATION OF AMERICA, | ) <br> ) <br> )    Case No. 15 C 1067 <br> Plaintiff/Counter-Defendant,    ) <br> )    District Judge Matthew F. Kennelly <br> v.    ) <br> )    Magistrate Judge Sidney I. Schenkier <br> NESTLE PURINA PETCARE COMPANY,    ) <br> ) <br> ) <br> Defendant/Counter-Plaintiff.    ) |

**MEMORANDUM OPINION AND ORDER**

On February 3, 2015, Oil-Dri Corporation of America ("Oil-Dri") brought this suit against Nestle Purina PetCare Company ("Purina") for infringement of U.S. Patent No. 5,975,019 ("the '019 Patent"), entitled "Clumping Animal Litter." The application for the '019 Patent was filed on August 19, 1997, and the patent was issued to G. Robert Goss and D. Cristina Frugoli on November 2, 1999. *Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, No. 15 C 1067, 2018 WL 1071443, at *1 (N.D. Ill. Feb. 26, 2018) (St. Eve, J.). Purina has filed a motion to strike Oil-Dri's "alleged 'new' evidence of priority, 'Further Supplemental Revised Response to Purina's Interrogatory No. 1,' and portions of its [Oil-Dri's] Final Infringement Contentions" (doc. # 352: Purina's Mot. to Strike). Purina's motion to strike has now been fully briefed. For the reasons set forth below, we deny the motion but order Oil-Dri to present a witness or witnesses for deposition in accordance with this ruling.

I.

Discovery began in earnest in this case on March 15, 2017 (after an extended stay in connection with an *inter partes* review proceeding), when Oil-Dri served its initial disclosures and

produced three "invention-related documents," which were dated March 13, March 14, and July 22, 1997 (doc. # 411: Purina's Supp'l Br. in Supp. of Mot. to Strike, Ex. 3). On April 3, 1997, Oil-Dri produced 258 pages of additional documents, which included six pages of laboratory results from the notebooks of inventors Ms. Frugoli and Dr. Goss, dated June 13, 1996, June 20, 1996, February 21, 1997, and March 4, 1997 (Purina's Supp'l Br., Ex. 9).[1] However, in Oil-Dri's initial infringement contentions, served on March 29, 2017 (and in Oil-Dri's amended initial contentions, served on April 4, 2017), Oil-Dri stated -- pursuant to Local Patent Rule ("LPR") 2.2(f) -- that all of the asserted claims in the '019 Patent had a "priority date" of August 19, 1997, the date the patent application was filed (Purina's Supp'l Br., Exs. 4, 11).

On May 16, 2017, Purina served its first set of interrogatories on Oil-Dri. In Interrogatory No. 1, Purina asked Oil-Dri to identify "all alleged dates of conception, subsequent diligence until reduction to practice, dates of actual reduction to practice, and written descriptions or drawings prepared prior to the filing date of the '019 Patent" (Purina's Mot., Ex. C, Interrog. No. 1). In its response, served on June 15, 2017, Oil-Dri stated that Claims 1-3 and 30 were conceived on June 20, 1996, and reduced to practice on February 21, February 24, and March 4, 1997 (Purina's Mot., Ex. D: Oil-Dri's 06/15/2017 Resp. to Interrog. No. 1).[2] Oil-Dri also stated that the asserted claims were entitled to a "constructive" reduction to practice date of August 19, 1997, the date the application was filed (*Id.*).[3] Along with its response, Oil-Dri produced three pages from Dr. Goss's

---

[1] Although the parties do not mention inventor Goss's academic background, they refer to him as "Dr. Goss," and we will do the same here.

[2] Purina's motion focuses on the alleged dates of conception and reduction to practice for Claims 1-3 and 30 (*see* Purina's Mot. at 3; *see also* Purina's Supp'l Br. at 4-6), and thus we do as well.

[3] Constructive reduction to practice is the date of the "filing of a patent application . . . of the invention disclosed therein." *Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, 774 F.3d 968, 975 (Fed. Cir. 2014).

and Ms. Frugoli's lab notebooks that it had not previously produced; these documents were dated February 20, 1997, March 10, 1997, and May 5, 1997 (Purina's Supp'l Br., Ex. 13).

Between June 15, 2017 and January 31, 2018, Oil-Dri did not amend the asserted dates of conception or reduction to practice for the '019 Patent.[4] During this time, Purina took the deposition of Ms. Frugoli on November 10, 2017, and the deposition of Dr. Goss on October 25 and December 7, 2017 (Purina's Supp'l Br. at 5 and n.5). Oil-Dri served final infringement contentions on December 8, 2017, but on February 26, 2018, on Purina's motion, Judge St. Eve struck them and ordered Oil-Dri to serve amended final infringement contentions by March 5, 2018 (doc. # 323: J. St. Eve 02/26/18 Mem. Op. and Order).

Prior to that ruling, on January 31, 2018, Oil-Dri amended its response to Purina's Interrogatory No. 1, asserting that Claims 1-30 and 30 were conceived on March 4, 1997 (a later date than asserted in the original interrogatory response) and reduced to practice "by" March 13, 1997 (again, a later date than asserted in the original interrogatory response) (Purina's Mot., Ex. E). Purina posed no objection to this amended response. Two weeks later, on February 15, 2018, Oil-Dri again amended its response to Interrogatory No. 1 in a document entitled "Further Supplemental Revised Response" (Purina's Mot., Ex. F). This time, Oil-Dri asserted that it conceived of Claims 1-3 and 30 on July 25, 1996 (one month later than the date asserted in the original interrogatory response but earlier than the date asserted in the first amended response) and reduced them to practice on July 25, 1996 and March 4, 1997 (earlier dates than asserted in the first amended response) (*Id.*). In addition, Oil-Dri produced five documents it had not previously produced, including two pages from Ms. Frugoli's lab notebook dated July 23 and July 25, 1996,

---

[4]Purina notes – without elaboration -- that Oil-Dri also produced a one-page memorandum on July 25, 2017, drafted by Dr. Goss on March 30, 1997, that set forth some dates related to "the time frame the patent claim was reduced to practice" (Purina's Supp'l Br., Ex. 5).

one page from the lab notebook of another Oil-Dri employee, Robert Soral, and two memoranda from Dr. Goss discussing the previous three pages (Purina's Supp'l Br., Exs. 19-20). On March 5, 2018, Purina filed the instant motion to strike, and the following day, Purina deposed Dr. Goss again.

## II.

In the motion pending before this Court, Purina's lead argument is that Oil-Dri should be bound by the documents and priority date it identified in its initial disclosures and contentions in March 2017 (Purina's Mot. to Strike at 5). Purina contends Oil-Dri violated LPR 2.1(a)(2) and 2.2(f), as well as the "very purpose of the Local Patent Rules which are designed to prevent a 'shifting sands' approach to discovery" (*Id.*).[5] Alternatively, Purina argues that the Court should strike the further supplemental response and documents Oil-Dri served on February 15, 2018, and hold Oil-Dri to the dates it identified in its first supplemental interrogatory response dated January 31, 2018 (*Id.* at 11). We address each argument in turn.

### A.

It is true that "[l]ocal patent rules are meant to prevent a shifting sands approach to claim construction by forcing the parties to crystallize their theories of the case early in litigation." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (internal citations and quotations omitted). Indeed, the Local Patent Rules in this district state that the purpose of initial disclosures is to supplement the disclosures required by Federal Rule of Civil

---

[5]Purina also contends that Oil-Dri violated LPR 3.4, which permits amendment of final infringement contentions only by order of the Court upon a showing of good cause (Purina's Mot. to Strike at 5). However, Purina does not further develop this argument; Purina does not attach a copy of Oil-Dri's amended final infringement contentions or allege what in Oil-Dri's final infringement contentions is improper and should be barred. Moreover, the amended final infringement contentions Oil-Dri served on March 5, 2018, did not require a showing of good cause under LPR 3.4 because they were served pursuant to Judge St. Eve's order.

4

Procedure 26(a)(1) and "to require the parties to identify the likely issues in the case, to enable them to focus and narrow their discovery requests." LPR 2.0.

However, initial disclosures and contentions are *not* intended to be binding upon the parties. We note that on June 9, 2018, Judge Kennelly issued a memorandum opinion and order denying a motion by Oil-Dri to bar Purina from including invalidity defenses in its final contentions that it did not assert in its initial contentions (doc. # 503: 06/09/18 Mem. Op. and Order).[6] In so doing, Judge Kennelly explained that "[h]ad the drafters of the Rules intended the initial contentions to be binding or to, in effect, estop the parties from taking different or contrary positions later, they would not have required the disclosures at such an early stage of the case" (*Id.* at 2). Although the Local Rules "require a showing of good cause and the absence of unfair prejudice to amend final contentions . . . they contain no similar requirement that would effectively bind a party to its initial contentions" (*Id.*).

LPR 2.1(a)(2) requires a party asserting a claim of patent infringement to produce, along with its initial disclosures, "all documents" in its possession, custody or control concerning the conception, reduction to practice, design, and development of each claimed invention. However, the LPRs anticipate that initial disclosures and discovery responses may be supplemented. LPR 1.7 adopts Federal Rule of Civil Procedure 26(e)'s requirements concerning supplementation of disclosure and discovery responses. Rule 26(e) states that:

> [a] party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court.

---

[6]On May 23, 2018, this case was reassigned to Judge Kennelly from Judge St. Eve upon Judge St. Eve's installation as a court of appeals judge (doc. # 498).

Fed. R. Civ. P. 26(e)(1). In other words, under Rule 26(e), Oil-Dri had a duty to supplement or correct its initial disclosures and responses to Purina's interrogatories in a timely manner if Oil-Dri considered the prior disclosures or responses incomplete or incorrect. *See Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1282 (Fed. Cir. 2012) (Rule 26(e) "prohibits parties who are aware of their deficient response from holding back material items and disclosing them at the last moment"). The Local Patent Rules did not eliminate that duty, but adopted it. Thus, we reject Purina's request to irrevocably bind Oil-Dri to its initial disclosures and contentions.[7]

### B.

Having concluded that Oil-Dri is not bound by its initial disclosures and contentions, we next must determine whether Oil-Dri supplemented or amended its initial disclosures and responses in a timely manner, and if not, whether Purina was prejudiced by any late disclosure. The Court has broad discretion to manage discovery matters and enforce the Local Patent Rules. *See Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1329 (Fed. Cir. 2013); *Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1035 (Fed. Cir. 2015).

An inventor can antedate a reference by showing conception ("the formation, in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is thereafter to be applied in practice") and actual or constructive reduction to practice (evidence that the invention, as conceived, was shown to work for its intended purpose) before the date of the adverse prior art reference. *In re Steed*, 802 F.3d 1311, 1316 (Fed. Cir. 2015). Here, Oil-Dri's amendments to its dates of conception and reduction to practice, and the supplements to its

---

[7]That said, we are puzzled as to why Oil-Dri disclosed a priority date under LPR 2.2(f), which only requires a priority date to be disclosed in initial infringement contentions "for any patent that claims priority to an earlier application." LPR 2.2(f). The '019 Patent does not claim priority to any earlier filed patent application, and as of March 1997, Purina had not yet asserted any prior art references, thus begging the question of *to what* Oil-Dri was asserting priority on March 29, 2017.

disclosures (as well as Purina's motion to strike them), could affect the priority of the '019 Patent and the applicability under 35 U.S.C. § 103 of Purina's prior art references: specifically, the accused products.[8] Purina argues that the accused products were invented before February 1997 (doc. # 407: 03/23/18 Tr. at 11:9-14). That means the accused products may predate the reduction to practice date in Oil-Dri's January 31, 2018 supplement, but may postdate the reduction to practice dates asserted in Oil-Dri's February 15, 2018 further supplemental revised interrogatory response.[9]

### 1.

Purina contends that Oil-Dri's January 31, 2018 amendment should be binding, but that Oil-Dri's February 15, 2018 amendment was untimely and should be barred. Specifically, Purina argues "there should be no dispute that Oil-Dri expressly abandoned June 20, 1996 as an alleged date of conception when, in its January 31, 2018 Supplemental Response, Oil-Dri admitted a later date – March 4, 1997," but that Oil-Dri's second amendment to the interrogatory – served only two weeks later -- was an untimely, improper "attempt to inject an earlier date of conception" (Purina's Supp'l Br. at 13).

Purina's argument misunderstands the issue of timeliness here. The issue is not whether Oil-Dri's January 31, 2018 and February 15, 2018 amendments were untimely vis-à-vis the cut-off date of fact discovery on March 9, 2018. Instead, the question of timeliness here comes from

---

[8]Because the '019 Patent application does not contain a claim having an effective filing date on or after the effective date of the America Invents Act ("AIA") (March 16, 2013), the pre-AIA version of the patent laws apply. *See In re Durance*, 891 F.3d 991, 996 n.1 (Fed. Cir. 2018).

[9]Alternatively, pre-AIA, an inventor could antedate an adverse reference by showing that the invention was conceived before the effective date of the reference, with diligence from the period "just preceding the effective date of the adverse reference, to the actual or constructive reduction to practice." *Steed*, 802 F.3d at 1317, 1320. *See also Apator Miitors ApS v. Kamstrup A/S*, 887 F.3d 1293, 1295 (Fed. Cir. 2018) (same). Purina notes that Oil-Dri did not assert a date of diligence until reduction to practice for Claims 1-3 and 30, but if the dates of Oil-Dri's conception and reduction to practice precede the date of Purina's prior art, the question of diligence is irrelevant.

Rule 26(e), which requires a party to supplement or correct its disclosures or responses "in a timely manner if [it] learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). Here, Purina offers no evidence that Oil-Dri failed to amend or supplement its initial disclosures in a timely manner once it realized they were incomplete or incorrect. Three additional factors persuade the Court that Oil-Dri's amendments and supplements were not untimely under Rule 26(e).

*First*, while Oil-Dri's first amendment to its interrogatory response on January 31, 2018 came more than seven months after its initial response to Purina's Interrogatory No. 1, Oil-Dri's second amendment came only two weeks later, on February 15, 2018. The timing of this additional supplement suggests Oil-Dri attempted to act quickly to correct a response it deemed to be in error. *Second*, although discovery was scheduled to close on March 9, 2018, Purina still had ample time -- three weeks -- after the February 15, 2018 disclosures to prepare for its next deposition of Dr. Goss on March 6, 2018. *Third*, there was a flurry of discovery activity by both parties on the eve of the fact discovery deadline of March 9, 2018 (*see, e.g.*, doc. # 313 (02/22/18 Min. Order); doc. # 324 (02/26/18 Joint Status Report); doc. # 330 (02/27/2018 Min. Order)). Neither side can claim the high ground in the timeliness with which it provided the other with relevant discovery.

The mere two-week difference between the January 31, 2018 and the February 15, 2018 amended responses suggests that Purina is not actually worried about the timeliness of the latest response, but rather about its substance. The January 31, 2018 amendments moved the previously asserted conception date from June 1996 to March 1997. Because Purina contends that the effective date of its prior art preceded February 1997, this change in Oil-Dri's conception date could make all the difference in Purina's ability to assert the priority of its prior art under Section

103. However, the substantive impact, *vel non*, of Oil-Dri's February 2018 supplement is not the measure of whether it was timely within the meaning of Rule 26(e).

## 2.

Even if Oil-Dri's February 2018 amendments were not timely, we are not persuaded by Purina's assertion of prejudice. Purina contends that it was prejudiced because "[b]ased upon Oil-Dri's required disclosures, Purina prepared its defenses and strategies based upon Oil-Dri's August 19, 1997 priority date" (Purina's Supp'l Br. at 11). This claim is suspect for several reasons.

*First*, the "priority date" Oil-Dri asserted on March 29, 2017 was incongruous with the "invention-related" documents Oil-Dri had produced to Purina two weeks earlier. Some of those documents preceded the August 19, 1997 date by more than six months (*see* Purina's Supp'l Br., Ex. 3). These documents were the first indication to Purina that Oil-Dri might assert earlier priority dates.

*Second*, on April 3, 2017, Oil-Dri produced additional documents, including six pages of laboratory results from the notebooks of inventors Ms. Frugoli and Dr. Goss, dated June 13, 1996, June 20, 1996, February 21, 1997, and March 4, 1997 (Purina's Supp'l Br., Ex. 9). These disclosures, together with the March 15, 2017 disclosures, should have alerted Purina that Oil-Dri might asset an earlier invention date for the '019 Patent than its August 19, 1997 filing date.

*Third*, Purina's actions demonstrate that it did not believe Oil-Dri intended August 19, 1997, to be the last word as to the priority date of the '019 Patent. On May 16, 2017, in its first set of interrogatories, Purina sought clarification on the issue of priority, asking Oil-Dri to identify "all alleged dates of conception, subsequent diligence until reduction to practice, dates of actual reduction to practice, and written descriptions or drawings prepared prior to the filing date of the '019 Patent" (Purina's Mot., Ex. C, Interrog. No. 1). In its response on June 15, 2017, Oil-Dri

9

clarified that the August 19, 1997 filing date was the date the '019 Patent was constructively reduced to practice, but that Claims 1-3 and 30 were conceived earlier, on June 20, 1996, and reduced to practice on February 21, February 24, and March 4, 1997 (Purina's Mot., Ex. D). For this reason, we also find implausible Purina's argument that its search for prior art was somehow constrained by the assertion in Oil-Dri's initial contentions of a priority date of August 19, 1997.

*Fourth*, Purina did not take issue with either Oil-Dri's June 2017 or January 2018 interrogatory responses. Purina does not identify any prejudice it suffered from the timing of Oil-Dri's amendment on February 15, 2018, which occurred only two weeks after the January 31, 2018 amendment. On February 15, 2018, Oil-Dri asserted a conception date of July 1996, earlier than the March 1997 conception date it asserted on January 31, 2018. However, Oil-Dri had asserted an even earlier conception date -- June 20, 1996 -- on June 15, 2017, in its initial response to Purina's interrogatory. Purina never objected to that interrogatory response, and by February 2018, already had more than seven months to conduct discovery around that earlier date. While Purina might prefer the later dates asserted in the January 31, 2018 amendment, Purina is not prejudiced simply because it does not substantively like the amendment. Accordingly, we deny Purina's motion to strike.

### III.

While we do not strike any of Oil-Dri's asserted dates, we have reservations about the number and timing of Oil-Dri's amendments to its dates of conception and reduction to practice. As this Court has noted previously (03/23/18 Tr. at 17:19-18:8), the dates asserted in each of Oil-Dri's responses to Purina's interrogatory were based on information that was within Oil-Dri's possession long before it filed this suit. The notes and memoranda of Dr. Goss were uniquely within Oil-Dri's control: Dr. Goss was employed by Oil-Dri from the time of the alleged invention

until 2015, and in 2015, he became – and continues to be – a regular, part-time consultant for Oil-Dri (Oil-Dri's Resp. at 12). Likewise, Ms. Frugoli and Mr. Soral were employed by Oil-Dri at the time they created the lab notebook pages that Oil-Dri produced in February 2018.[10] We find unsatisfying Oil-Dri's explanation for not figuring out the dates related to the priority of the '019 Patent before February 2018: "[i]t's about resources, . . . and [Oil-Dri] didn't think it mattered" (03/23/18 Tr. at 20:7-8).

We have considered Purina's concern that it has not had the opportunity to fully explore the relevant dates asserted and documents produced by Oil-Dri on February 15, 2018 (Purina's Mot. at 10). Oil-Dri produced Dr. Goss for the deposition on March 6, 2018, but the parties hotly dispute how prepared or unprepared Dr. Goss was on that date. Having reviewed the transcript portions cited by the parties, we are persuaded that in the interest of ensuring a complete discovery record upon which to assess the shifting dates asserted by Oil-Dri related to the priority of the '019 Patent, we should order Oil-Dri to produce a Rule 30(b)(6) witness for deposition on that topic.

The Oil-Dri Rule 30(b)(6) witness must be prepared to testify, in detail, about the meaning of and basis for each conception and reduction to practice date alleged in each version of Oil-Dri's response to Interrogatory No. 1 for Claims 1-3 and 30 of the '019 Patent, and to testify in detail about the basis for each change in these dates. The witness also must be prepared to testify about each document that was considered in asserting each date. We expect Oil-Dri's Rule 30(b)(6) witness will be Dr. Goss, as he verified both Oil-Dri's January 31, 2018 revised response to Purina's Interrogatory No. 1 and Oil-Dri's February 15, 2018 further supplemental revised response (Purina's Supp'l Br., Exs. 17-18). In addition, Dr. Goss has already reviewed the documents Oil-Dri newly disclosed on February 15, 2018 (Purina's Supp'l Br. at 6-7). However,

---

[10] The parties do not assert how long Ms. Frugoli and Mr. Soral were employed by Oil-Dri, or whether they are still employed by Oil-Dri.

11

in the event Oil-Dri chooses another individual to sit for the Rule 30(b)(6) deposition, the Court orders that Oil-Dri additionally produce Dr. Goss for a deposition to address the foregoing topics.

## CONCLUSION

Our decision today is not a finding that any of Oil-Dri's asserted dates are correct, or which of them constitutes the actual dates of conception or reduction to practice. All we hold today is that the dates in Oil-Dri's February 2018 interrogatory response and final infringement contentions are not stricken, and that Purina is entitled to further discovery to probe these dates in order to create a full evidentiary record on which they may be assessed by the trial judge and/or jury.

For the foregoing reasons, we deny Purina's motion to strike in its entirety (doc. # 352). We order Oil-Dri to produce a Rule 30(b)(6) witness -- and, if he is not the Rule 30(b)(6) witness, Dr. Goss -- to sit for a deposition by July 30, 2018.

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

DATE: June 26, 2018