IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Oil-Dri Corporation of America, | ) | |
| | ) | Case No. 1:15-cv-01067 |
| Plaintiff, | ) | |
| | ) | Hon. Matthew F. Kennelly |
| v. | ) | |
| | ) | Magistrate Judge Sidney I. Schenkier |
| Nestlé Purina PetCare Company, | ) | |
| | ) | JURY TRIAL DEMAND |
| Defendant. | ) | |

**PLAINTIFF OIL-DRI'S REPLY IN SUPPORT OF ITS MOTION FOR SANCTIONS REGARDING THE DEPOSITION OF THIRD-PARTY WITNESS JERRY GLYNN**

Nestle's response shows that the only reasonable inference to be drawn from its lawyers' conduct is that they solicited Glynn's representation so that Glynn would provide testimony – at his April, 2018 deposition, and ultimately at trial – about the events of 20 years ago that was more favorable to Nestle than had Glynn not been represented by Nestle's lawyers, and that, due to the attorney-client privilege that would result, Oil-Dri would never be able to learn what Glynn's testimony otherwise would have been.

Why else would Nestle:

- Serve Glynn with a subpoena for documents and a deposition, and then have two law firm partners of record for Nestle in this case call Glynn and solicit ("offer[] to represent") him, presumably at no cost to Glynn, to help him respond *to the very subpoena they had just served on him*? (R.535-2, Williamson Decl. at ¶¶ 5 and 7; R.535-1, Glynn Decl. at ¶¶ 5 and 12);

- Use the attorney-client relationship that – unbeknownst to Oil-Dri – its lawyers had just secured with Glynn to gain access to Glynn's documents well before Glynn's deposition; use those documents to twice prepare Glynn for his deposition; but then neither produce the documents to Oil-Dri in advance of the deposition, *so that it, too, could prepare to ask Glynn questions about them*, or even tell Oil-Dri that it had them before the deposition? (R.535-2, Williamson Decl. at ¶ 12; R.535-1, Glynn Decl. at ¶ 16);

1

- Intentionally elect to not tell Oil-Dri in advance of the deposition that Nestle's lawyers represented Glynn, knowing that Oil-Dri counsel was unaware of the representation, and indeed *was explicitly mistaken* in his understanding about who represented Glynn? (R.535-2, Williamson Decl. at ¶¶ 8-11).[1]

The admitted and undisputable facts thus show that Nestle's lawyers made an improper solicitation of Glynn, and that the damage caused – *and indeed intended* – by this behavior was that both Oil-Dri and this legal process were deprived of, and will likely never know, what Glynn's testimony would have been had he not been prepared for his testimony by Nestle's lawyers.

The rules that prohibit lawyer solicitation are plainly intended to protect persons like Glynn against the potential for abuse that could easily result from a lawyer imposing burdens on a witness by serving him with a subpoena, and then offering to relieve those burdens by providing cost-free representation to facilitate the witness's response thereto. *See, e.g.*, MRPC 7.3(a) and IRPC 7.3(a) ("[a] lawyer shall not by in-person, live telephone or real-time electronic contact solicit professional employment when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain….").

The purported denial in Glynn's declaration that he felt any "threat" or "intimidation" by Nestle's subpoena (R.535-1, Glynn Decl. at ¶ 7), even if believed, does not render the ethical prohibition inapplicable here. Moreover, the fact that the declaration was obviously written by Nestle's lawyers *in defense of their own behavior* shows not only that the purported denial should not be believed, but also why Nestle's lawyers should never have solicited Glynn's representation

---

[1] Nestle now disingenuously argues that Mr. Mazza's March 22 email "false[ly]" represented that Glynn had retained "new" counsel. R.535 at 3. The email actually says that "[Glynn] advised that he has retained counsel" (*id*.)—not "new" counsel, since Mr. Mazza did not and could not know that Glynn was then represented at all, let alone by Nestle's lawyers. Yet, Nestle intentionally decided not to correct the mistake. The only conclusion which can be drawn, especially in combination with the other conduct of Nestle's lawyers, is that Nestle intentionally engaged in gamesmanship to obtain an improper advantage in the Glynn deposition.

in the first place. Because, whether in his deposition or declaration, ***Nestle's lawyers are still controlling Glynn's testimony, not for Glynn's benefit, but for their client's***.

The ethical rule is also intended to safeguard the integrity of the legal process. *See Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 457–58 (1978) (the "aim and effect of in-person solicitation may be to provide a one-sided presentation…" and "actually may disserve the individual and societal interest…in facilitating 'informed and reliable decisionmaking'"). However, the improper solicitation of Glynn prior to his deposition; the denial to Oil-Dri of access to Glynn's documents before the deposition; the reality that, at trial, Glynn will be confined to his deposition testimony; and the attorney-client privilege now existing between Nestle's lawyers and Glynn, all combine to mean that jurors will never know what Glynn's testimony would have been absent the involvement of Nestle's lawyers, or indeed even that the testimony they hear was the product of such involvement.

Nestle's response brags that the testimony its lawyers elicited from Glynn is "extremely relevant and damaging." R.535 at 1. While Oil-Dri disputes this characterization, it certainly believes that Glynn may prove to be an important witness. Nestle clearly believes so, too. This being the case, Nestle's lawyers should have been particularly observant of their ethical constraints, and their failure to do so has caused more prejudice to Oil-Dri and the integrity of this process than had Glynn been less significant.

Respectfully, what happened here is not fair to Oil-Dri, or this process. And, the unfairness is not remediable by any means other than an order of this Court forbidding Nestle to use Glynn as a witness for any purpose in this case. *See, e.g., Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 387 (7th Cir. 2008) (a "party may not ignore Rule 45's requirements and then, when caught, dictate the terms under which the subpoenaed materials will

3

be used. Rather, it is within the court's inherent powers to assess the appropriate sanctions for violations of discovery rules"); *Murphy v. Bd. of Educ. of Rochester City Sch. Dist.*, 196 F.R.D. 220, 226 (W.D.N.Y. 2000) (for purposes of awarding sanctions, attorney's delay in providing responsive documents "constitute[s] clear evidence of bad faith, and [was] taken for the improper purpose of obtaining and reviewing the documents in question before opposing counsel had the opportunity to object").

Dated: September 24, 2018

Respectfully submitted,

/s/ Michael P. Mazza/
Michael P. Mazza, No. 6201609
Paul R. Hale, No. 6320732
Michael P. Mazza, LLC
686 Crescent Blvd.
Glen Ellyn, Illinois 60137-4281
Phone: (630) 858-5071
Fax: (630) 282-7123
Email: mazza@mazzallc.com
         paul@mazzallc.com

Shawn M. Collins, ARDC #6195107
Robert L. Dawidiuk, ARDC #6282717
Jeffrey M. Cisowski, ARDC #6308759
THE COLLINS LAW FIRM, P.C.
1770 Park Street, Suite 200
Naperville, IL 60563
Tel: 630-527-1595
E-mail: shawn@collinslaw.com
         rdawidiuk@collinslaw.com
         jcisowski@collinslaw.com

**Attorneys for Plaintiff
Oil-Dri Corporation of America**

4

5

## **CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record who have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system pursuant to L.R. 5.9 on September 24, 2018.

s/Michael P. Mazza/