# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| OIL-DRI CORP. OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 15 C 1067 |
| NESTLE PURINA PETCARE CO., | ) ) ) | |
| Defendant. | ) | |

## ORDER ON PLAINTIFF'S MOTION TO AMEND FINAL INFRINGEMENT CONTENTIONS AND PLAINTIFF'S MOTION TO EXCLUDE DEFENDANT'S WITNESS WALTER CLARK

In this order, the Court rules on two pending motions: plaintiff Oil-Dri's motion to amend its final infringement contentions to include doctrine of equivalents contentions, and Oil-Dri's motion to exclude defense witness Walter Clark.

**1.      Motion to amend final infringement contentions**

Back in February 2018, Judge Amy St. Eve, to whom this case was then assigned, struck Oil-Dri's final infringement contentions concerning its theory of infringement under the doctrine of equivalents on the ground that the contentions were insufficiently specific and did not comply with Local Patent Rule (LPR) 2.3(d). Mem. Op. and Order of Feb. 26, 2018, dkt. no. 323, at 9-11. Oil-Dri moved for reconsideration. Judge St. Eve denied the motion on May 7, 2018. Order of May 7, 2018, dkt. no. 453.

The case was reassigned to the undersigned judge following Judge St. Eve's appointment to the court of appeals. The Court issued a claim construction decision on September 5, 2018 and then set an expert witness disclosure and discovery schedule

on September 21, 2018, requiring Rule 26(a)(2) disclosures by October 26, 2018, rebuttal disclosures by November 26, 2018, and completion for expert witness depositions by December 14, 2018. The Court also set the case for trial on March 18, 2019.

On November 7, 2018, after getting Oil-Dri's expert reports submitted as part of its Rule 26(a)(2) disclosures, Nestle Purina moved to strike them in part, including expert disclosures concerning infringement under the doctrine of equivalents. It argued that these disclosures were barred by Judge St. Eve's rulings striking Oil-Dri's doctrine of equivalents final infringement contentions. The Court struck Oil-Dri's doctrine of equivalents disclosures on November 15, 2018 after hearing argument but did not preclude Oil-Dri from moving to amend its final infringement contentions. Oil-Dri filed such a motion to amend the next day, November 16, 2018. The motion is now fully briefed.

Local Patent Rule 3.4 states that a party may amend its final contentions "only by order of the Court upon a showing of good cause and absence of unfair prejudice to opposing parties, made promptly upon discovery of the basis for the amendment." N.D. Ill. LPR 3.4. Oil-Dri's motion does not satisfy any of the rule's requirements. First, the motion was not made promptly upon discovery of the basis for the amendment. Oil-Dri does not address this requirement in its motion, but it appears that it discovered the basis for the amendment back in February 2018, when it received certain clay samples from Nestle Purina. Yet it did not file the present motion for nine months, despite knowing as of Judge St. Eve's February 26, 2018 ruling that it had no "live" doctrine of equivalents infringement contentions.

2

Second, Oil-Dri says that it made its doctrine of equivalents contentions known to Nestle Purina via e-mails sent to its attorney in early March 2018. It seems to take the position that this was good enough. But the rule says that final contentions may be amended "only by order of the Court." Oil-Dri may not end-run this requirement by relying on disclosures made on the if-come ("[s]hould the Court allow it," see Pl.'s Mot. to Amend, Ex. B) without so much as an attempt to seek court permission.

Third, Oil-Dri has not shown good cause; indeed, it has barely attempted to do so. Both its motion and its reply focus on its contention that Nestle Purina was aware of its position due to the March 2018 e-mails. That confuses notice with good cause. The closest Oil-Dri comes to arguing good cause is a seeming contention that Judge St. Eve's February 2018 ruling was wrong. *See* Mot. to Amend at 2. If that is what Oil-Dri is contending, the argument lacks merit. Judge St. Eve denied a motion to reconsider, and Oil-Dri did not even attempt to seek amendment after that. The earlier rulings are the law of the case, and now is far too late to seek reconsideration.

The rule also requires the absence of unfair prejudice to the opposing party (Nestle Purina). Oil-Dri cites evidence suggesting that Nestle Purina was assuming that the doctrine of equivalents theory was in the case. But that misses the point. Nestle Purina was entitled to rely on Judge St. Eve's rulings. The prejudice that it would experience were the Court to permit the amendment is clear: it would have to conduct further depositions of Oil-Dri's experts; it would have to obtain and conduct testing of clay samples; and it would have to supplement its own expert disclosures. Oil-Dri responds that this can be done quickly (actually it likely would take about six weeks of hard work, all told), but allowing a post-discovery amendment simply because a fix is

3

available is tantamount to saying that court-imposed discovery and disclosure deadlines are meaningless. And even were one to conclude that Nestle Purina would not be unfairly prejudiced, the Local Patent Rules do not permit a party to amend its final infringement contentions so long as the other party is not unfairly prejudiced; good cause and timeliness are also required. As the Court has concluded, Oil-Dri has met neither of those requirements.

For these reasons, the Court denies Oil-Dri's motion to amend its final infringement contentions [dkt. no. 592].

**2.     Plaintiff's motion to exclude defense witness Walter Clark**

Oil-Dri has moved to bar the testimony of Walter Clark, designated by Nestle Purina as an expert witness. Oil-Dri says that Clark is actually a fact witness who was not timely disclosed by Nestle Purina. Nestle Purina's Rule 26(a)(2) disclosure regarding Clark reflects that he worked for a company called Western Aggregate, Inc. (WAI) from 1993 to 1995 working on development of a clumping litter product, in partnership with Oil-Dri. He offers opinions—based on legal definitions provided to him by counsel—that the invention claimed by Oil-Dri in its patent was actually invented by WAI, or was anticipated or rendered by an invention by WAI. The invention by WAI that Clark cites, however, was the result of the project he worked on, and nearly all of the evidence on which he relies consists of memoranda and reports that he authored or co-authored while working for WAI. *See* Clark Report, dkt. no. 567-8, ¶¶ 13-15, 30-39. In addition, in rendering the opinions in his report, Clark states that certain of these materials, and more generally the formulation he says he developed while working on the project for WAI, was disclosed to Oil-Dri at the time. *See id.* ¶¶ 36-39, 42-46. In

short, Clark is not the usual retained expert witness who comes in after the fact and renders opinions based on evidence provided to him in connection with the litigation. Rather, in his report, he discusses about what he himself did during historical events relevant to the litigation, discusses what Oil-Dri did and what it knew during and as a result of those events, and analyzes evidence that he himself helped create.

A great deal of what is included in Clark's original report is, quite simply, fact testimony, and nearly all of the rest of it is opinion testimony that is dependent on and closely intertwined with the fact testimony. At the hearing on Oil-Dri's motion to exclude Clark's testimony, however, Nestle Purina's counsel stated that the company was not proposing to have Clark comment on any communications he had with Oil-Dri or about the nature of any work he did with WAI. Rather, Nestle Purina said, he would simply rely on documentary evidence regarding the composition of the material WAI developed and, based on that, render opinions regarding anticipation and obviousness. The Court pointed out that what Nestle Purina was representing was inconsistent with Clark's report. The Court noted that a Rule 26(a)(2) disclosure is supposed to represent, in effect, the expert witness's direct examination, and that what Clark was saying in his report was "fact testimony. And he wasn't ever disclosed as a fact witness, period, end of discussion. He just wasn't." The report, the Court stated, "contains fact testimony that is not the subject of Rule 26 disclosure and it's not substantially justified and it's definitely not harmless because it would require reopening discovery . . . ." The Court said, however, that if Nestle Purina wanted to offer a revised version of the report to make it consistent with its stated intentions at the hearing, the Court would consider it.

5

Nestle Purina presented a revised version of Clark's report several days later. It has excised from the report references to Clark's authorship of materials on which he relies and his involvement in WAI's development work. But the report still expressly relies heavily—in fact, almost exclusively—on these same materials, and on the proposition that they were disclosed to Oil-Dri. *See, e.g.*, Clark Revised Report, dkt. no. 589-1, ¶¶ 30A-H, 32-40. Unless Nestle Purina does not intend to offer these materials in evidence or refer to them (whether through Clark or someone else)—which the Court seriously doubts—it will be quite obvious to anyone considering Clark's testimony that he was a participant in the events he is discussing. Indeed, the background section of Clark's report remains largely as it was before, modified only to make it *more* apparent that Clark was personally involved in the events that form the basis for his testimony. *See id.* ¶¶ 14 (final sentence added stating that "[m]y work with WAI included working on the research and development of a new clumping litter"), 13, 15. In short, Nestle Purina is trying to have it both ways. Even with the modifications, Clark would be rendering opinion testimony inextricably intertwined with fact (i.e., occurrence witness) testimony. Nestle Purina's revised version of his report does not separate the two. The company continues to present Clark as, in effect, a fact witness who also renders opinions based on the facts about which he testifies.

If Nestle Purina had disclosed Clark as a fact witness in a timely fashion—in other words, during the period of fact discovery—Oil-Dri would have been able to take discovery to gather evidence to attempt to refute Clark's contentions regarding the historical events that underlie his opinion testimony. But that did not happen. Well after the end of fact discovery, Nestle Purina contacted Oil-Dri about adding Clark as a fact

witness—making a proposal to allow each side to add a fact witness—and shortly after Oil-Dri declined, Nestle Purina served Clark's Rule 26(a)(2) disclosure. It is readily apparent here that Nestle Purina has attempted to end-run the requirements of Rule 26(a)(2), as well as the separation of fact discovery (completed earlier) and expert discovery, by repackaging Clark as an expert. *See Henry v. Quicken Loans Inc.*, No. 04-40346, 2008 WL 4735228, at *6 (E.D. Mich. Oct. 15, 2008) ("Defendants cannot use an expert to develop facts after the close of discovery when those same facts could have been developed by attorneys during fact discovery."); *see also Ruiz-Bueno v. Scott*, No. 2:12-cv-0809, 2014 WL 576400, at *4 (S.D. Ohio Feb. 12, 2014) (precluding a party from developing fact evidence "under the guise of 'expert discovery'").

In sum, because Clark was not disclosed as a fact witness—and, as before, the non-disclosure is neither justified nor harmless—the Court excludes his testimony.

Date: December 21, 2018

_____
MATTHEW F. KENNELLY
United States District Judge